UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

JEFFREY NIEVES,

                    Petitioner,

          v.

DARWIN LACLAIR, *Superintendent, Franklin
Correctional Facility*,[1]

                    Respondent.

------------------------------------------------------------

**MEMORANDUM & ORDER**
14-CV-108 (MKB)

MARGO K. BRODIE, United States District Judge:

Petitioner Jeffrey Nieves, proceeding *pro se*, filed the above-captioned action for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 on January 2, 2014, alleging that he was being held

in state custody in violation of his federal constitutional rights.  (Pet. 3, Docket Entry No. 1.)[2]

Petitioner's claims arise from judgments of conviction following entry of a guilty plea in the

Supreme Court of New York, Kings County, (the "Trial Court") for committing one count of

murder in the second degree and one count of robbery in the second degree.  (*Id.*)

---

[1]  Although Darwin LaClair may no longer be the appropriate respondent, the Court
declines to substitute another official.  At the time the Court received the petition on January 2,
2014, LaClair was the appropriate respondent because "the petitioner [was then] in custody
under a state-court judgment," and LaClair was the "the state officer who ha[d] custody."  Rule
2(a) Gov'g § 2254 Cases in U.S. District Cts.  Since that time, New York Department of
Corrections and Community Supervision (DOCCS) records show that Petitioner was released
from prison to parole supervision on June 11, 2015, and subsequently discharged from parole
effective November 30, 2020.  Inmate Population Search, NYSDOCCS,
http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120.  Rather than determine the
new appropriate respondent, *see* Fed. R. Civ. P. 25(d), the Court leaves the case caption
unchanged because, as explained below, the petition fails on its merits and the Court therefore
has no occasion to order any relief.

[2]  Because the petition is not consecutively paginated, the Court refers to the page
numbers assigned by the electronic filing system.

Petitioner brings two claims. First, he alleges that prosecutors breached his plea agreement by failing to alert his parole board, once Petitioner became eligible for parole, of Petitioner's cooperation in an unrelated investigation, and by failing to advocate for his early release to parole once he reached parole eligibility. (*Id.* at 7.) Second, Petitioner alleges that his trial counsel provided ineffective assistance during the plea negotiation process and by failing to attend Petitioner's interviews with investigators conducted as part of Petitioner's cooperation efforts. (*Id.* at 8.) For the reasons discussed below, the Court denies Petitioner habeas corpus relief on both claims.[3]

## I. Background

### a. Trial Court proceedings

Petitioner entered a guilty plea on June 5, 1996, to the top count of an indictment charging him with second-degree murder. (Plea Hr'g Tr. 6:21–10:7, annexed to Aff. of Linda Breen in Opp'n to Pet. ("Breen Aff.") as Ex. A, Docket Entry No. 11-1.) At the plea hearing, Petitioner testified that on July 4, 1995, he shot and killed Bless Jordon with a .25-caliber automatic firearm as Jordon ran away from Petitioner. (*Id.* at 7:20–9:4.) Petitioner further testified that he intended to kill Jordon and that he did not act in self-defense. (*Id.* at 8:11–9:4.) In exchange for his plea of guilty, Petitioner's trial counsel explained that Petitioner:

> would be sentenced to [fifteen years] to life [in prison]. In conjunction with that, [he] would cooperate with the district attorney's office with some unspecified matters . . . ; and, also, that the district attorney's office would acknowledge his cooperation with respect to those unspecified matters when and if he comes up in front of the parole board.

(*Id.* at 2:15–23.) When the Trial Court asked if that was the prosecutors' understanding of the

---

[3] The Court vacates the August 4, 2020 Order, (*see* Order dated Aug. 4, 2020), referring the case to a magistrate judge for a report and recommendation.

plea agreement,[4] the prosecutor responded, "Yes, your Honor. Yesterday [Petitioner], through his attorney of course, gave us some information which he thinks he may have information on certain crimes. That's all." (*Id.* at 2:24–3:6.) Before accepting his guilty plea, the Trial Court conducted a plea colloquy with Petitioner, including the following exchange:

> [TRIAL] COURT:     Are you entering your plea of guilty voluntarily and of your own free will?
>
> [PETITIONER]:     Yes.
>
> [TRIAL] COURT:     Anyone force you or pressure you in any way to plead guilty?
>
> [PETITIONER]:     No.
>
> [TRIAL] COURT:     [Did y]our attorney explain to you that if the [Trial] Court accepts your plea of guilty, it will sentence you to [a] period of incarceration, minimum of [fifteen] years, maximum of life? Is that what you were told? Can't hear you?
>
> [PETITIONER]:     Yes.
>
> [TRIAL] COURT:     Has anyone made any other promises to you in connection with the sentence?
>
> [PETITIONER]:     No.

(*Id.* at 7:3–17.) On August 13, 1996, the Trial Court sentenced Petitioner consistent with the plea agreement "to an indeterminate sentence of imprisonment — minimum term of [fifteen] years, maximum term of life." (Sent'g Hr'g Tr. 3:11–14, annexed to Breen Aff. as Ex. A, Docket Entry No. 11-1.)

---

[4] The Trial Court added that information provided at an off-the-record bench conference indicated that Petitioner had a relationship with one of the witnesses who would have had to testify at his trial and that Petitioner sought to enter a plea in part to avoid a trial and therefore avoid requiring the witness to testify. (Plea Hr'g Tr. 4:15–20.) Prosecutors and Petitioner's trial counsel indicated that a third party threatened to kill the witness if she testified against Petitioner. (*Id.* at 3:6–4:12.)

### b. Direct appeal

Petitioner appealed his conviction to the New York Supreme Court Appellate Division, Second Department (the "Appellate Division"). (Pet. 3.) Petitioner's court-appointed appellate counsel filed a brief explaining why the record presented no non-frivolous issues for appeal and requested permission to withdraw. (Pet'r's Direct Appeal Br. 5, annexed to Breen Aff as Ex. B, Docket Entry No. 11-2.) Prosecutors agreed that there were no non-frivolous appeal issues. (State's Direct Appeal Br., annexed to Breen Aff. as Ex. C, Docket Entry No. 11-2.)

The Appellate Division affirmed the conviction, explaining that it "reviewed the record and agree[d] with [Petitioner's] assigned counsel that there [were] no nonfrivolous issues which could be raised on appeal." *People v. Nieves*, 680 N.Y.S.2d 875, 875 (App. Div. 1998). Petitioner did not seek leave to appeal from the New York Court of Appeals. (Pet. 3; Breen Aff. ¶ 8, Docket Entry No. 11.)

### c. Initial proceedings before the Parole Board

On April 12, 2006, before Petitioner became eligible for parole, the Parole Board sought input from prosecutors on whether Petitioner should be granted parole. (Feb. 29, 2012 Aff. of Linda Breen ¶ 11, annexed to Breen Aff. as Ex. F, Docket Entry No. 11-4.) Prosecutors wrote to the Parole Board advising against the grant of parole and urging that Petitioner serve the maximum possible sentence under the law. (2006 Letter from Brooklyn District Att'y's Office to New York Division of Parole (the "2006 Letter to Parole") 18–19, annexed to Breen Aff. as Ex. F, Docket Entry No. 11-4.)[5] Although prosecutors had promised at Petitioner's plea hearing to inform the Parole Board of Petitioner's cooperation concerning other unspecified crimes, the

---

[5] Because the exhibit is not consecutively paginated, the Court refers to the page numbers assigned by the electronic filing system.

2006 Letter to Parole — written by a different assistant district attorney than the one who appeared at Petitioner's plea hearing — did not do so. (*Id.*) Prosecutors did not share this letter with Petitioner. (Pet'r's Aff. ¶ 3, Docket Entry No. 7.)

The Parole Board denied parole on October 5, 2009, and again on November 30, 2011. (2009 Parole Board Decision, annexed to Breen Aff. as Ex. P, Docket Entry No. 11-7; 2011 Parole Board Decision, annexed to Breen Aff. as Ex. Q, Docket Entry No. 11-7.) On December 5, 2011, after learning that he had been denied parole, Petitioner filed a Freedom of Information Law ("FOIL") request, asking that the Parole Board provide him with a copy of any letter prosecutors had written to the Parole Board concerning his parole application. (*See* FOIL Request 31, annexed to Breen Aff. as Ex. I, Docket Entry No. 11-4.)[6] The Parole Board refused to provide a copy of the letter. (*See id.* at 32.) Petitioner filed an administrative appeal of the denial of his FOIL request, (*id.* at 33), but the Parole Board denied Petitioner's appeal, (*id.* at 34).

### d. First postconviction motion

In 2011, Petitioner filed his first motion under section 440.10 of the New York Criminal Procedure Law ("440 Motion"), arguing that prosecutors had breached their plea agreement by failing to recommend early release to parole and failing to inform the Parole Board about Petitioner's post-plea cooperation. (*See* Aff. in Supp. of 440 Mot. 5–7, annexed to Breen Aff. as Ex. E, Docket Entry No. 11-3.) In response, on February 28, 2012, prosecutors sent a new letter to the Parole Board to "supplement[] the 2006 [Letter to Parole]" opposing parole. (2012 Letter from Brooklyn District Attorney's Office to N.Y. Dep't of Corrections and Community Supervision (the "2012 Letter to Parole") 21–22, annexed to Breen Aff. as Ex. F, Docket Entry

---

[6] Because the exhibit is not consecutively paginated, the Court refers to the page numbers assigned by the electronic filing system.

No. 11-4.)  The 2012 Letter to Parole indicated that as part of Petitioner's plea agreement, Petitioner "agreed to cooperate with the District Attorney's Office by giving information about certain criminal matters, in exchange for a promise that a sentence of fifteen years to life in prison would be imposed, and that the People would communicate with the Board of Parole to acknowledge his cooperation."  (*Id.*)  In addition, the new letter explained that "[i]t appears that the inmate complied with his agreement to cooperate with our Office."  (*Id.*)  On February 29, 2012 — the day after sending the new letter — prosecutors filed an answer brief opposing Petitioner's postconviction motion, explaining that they had not earlier notified the Parole Board of Petitioner's cooperation but had now corrected their earlier failure.  (Breen Aff. ¶ 16.)

The Trial Court denied Petitioner's 440 Motion on March 28, 2012.  (Trial Court's First Postconviction Order 4, annexed to Breen Aff. as Ex. G, Docket Entry No. 11-4.)  The Trial Court held that while prosecutors did not initially comply with their obligation to inform the Parole Board of Petitioner's cooperation, they did eventually do so, and that late compliance did not warrant vacating the guilty plea as a lesser remedy was available.  (*Id.* at 2–3 (citing *People v. Tindle*, 61 N.Y.2d 752 (1984)).)  As to Petitioner's argument that prosecutors failed to recommend early release to parole when Petitioner became parole-eligible, the Trial Court held that no evidence supported Petitioner's assertion that prosecutors in fact agreed to recommend parole after Petitioner had served the minimum fifteen-year prison sentence.  (*See id.* at 3.)  Finally, the Trial Court found that Petitioner had no expectation of parole from his plea agreement because the power to grant parole rests solely with the Parole Board, and neither prosecutors nor the sentencing court could have offered him a valid guarantee of parole at any point.  (*See id.* at 3–4.)

Petitioner sought leave to appeal.  The Appellate Division denied leave on June 20, 2012.

(App. Div. First Postconviction Order, annexed to Breen Aff. as Ex. H, Docket Entry No. 11-4.)

### e. Second 440 Motion

In 2012, Petitioner filed his second 440 Motion, arguing that: (1) prosecutors improperly interrogated Petitioner without counsel during Petitioner's post-plea cooperation interviews with investigators, (2) Petitioner's trial counsel provided ineffective assistance by failing to accompany Petitioner during those cooperation interviews, and (3) Petitioner's trial counsel provided ineffective assistance during various stages of the plea negotiation process. (Pet'r's Aff. in Supp. of Second 440 Mot. 11–20, annexed to Breen Aff. as Ex. K, Docket Entry No. 11-5.)

On April 16, 2013, the Trial Court entered an order denying Petitioner's motion. (Trial Court Second Postconviction Order 6, annexed to Breen Aff. as Ex. M, Docket Entry No. 11-7.) The Trial Court found that New York Criminal Procedure Law § 440.10(3)(c) procedurally barred Petitioner's claims for ineffective assistance of counsel because Petitioner could have, but failed to raise these claims in a prior motion. (*Id.* at 3.)

The Trial Court also rejected Petitioner's claims on the merits. As an initial matter, the Trial Court rejected Petitioner's assertion that prosecutors should have recommended early release to the Parole Board because the plea hearing indicates that prosecutors did not promise to make such a recommendation; they promised only to inform the Parole Board of Petitioner's cooperation. (*Id.* at 3–4.) The Trial Court further held that Petitioner's trial counsel could not be ineffective for failing to advise Petitioner about his likelihood of obtaining parole because the power to grant parole rests solely with the Parole Board and a criminal defendant's trial counsel may not estimate when, if at all, a defendant will obtain parole. (*Id.* at 4.) In addition, the Trial Court rejected Petitioner's allegation that trial counsel improperly failed to advise Petitioner to

accept an earlier, more lenient plea offer because the record lacked evidence that prosecutors ever conveyed such an offer. (*Id.* at 4–5.) For the same reason, the Trial Court also rejected Petitioner's allegation that his trial counsel failed to accompany Petitioner during his post-plea cooperation efforts with prosecutors. (*Id.* at 5.) Finally, the Trial Court held that a recent decision of the U.S. Supreme Court[7] concerning the effective assistance of counsel during plea negotiations did not constitute an intervening change in the law that would warrant renewing Petitioner's prior postconviction motion — which, unlike the second motion, did not challenge the effectiveness of Petitioner's trial counsel during plea negotiations. (*Id.* at 5–6.)

Petitioner sought leave to appeal but the Appellate Division denied leave. (App. Div. Second Postconviction Order, annexed to Breen Aff. as Ex. N, Docket Entry No. 11-7.) The Court of Appeals dismissed Petitioner's motion for leave to appeal from the Appellate Division's order because that order was not appealable to the Court of Appeals. (N.Y. Ct. of Appeals Order, annexed to Breen Aff. as Ex. O, Docket Entry No. 11-7.)

### f. Article 78 and new proceedings before the Parole Board

On October 29, 2012, Petitioner sought judicial review of the Parole Board's decision to deny him parole under Article 78 of New York's Civil Practice Law and Rules (the "Article 78 Proceeding"). (*See* Breen Aff. ¶ 26.) Petitioner sought to overturn the Parole Board's denial of parole because, among other grounds, the Parole Board did not consider Petitioner's post-plea cooperation with prosecutors and could not have, because they did not know about it until prosecutors informed them after they denied Petitioner parole. (*Id.*) Having then received the 2012 Letter to Parole informing the Parole Board of Petitioner's cooperation, the Parole Board

---

[7] *Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012) (defining the meaning of "prejudice" in the context of claims that defense counsel provided ineffective assistance leading to the rejection of a plea offer).

agreed to reconsider Petitioner's request for parole, prompting the New York Supreme Court, Albany County to dismiss the Article 78 proceeding as moot. (*Id.* ¶¶ 27–28.)

On May 6, 2013, the Parole Board reconsidered its earlier decisions to deny Petitioner parole but nevertheless reached the same conclusion. (May of 2013 Parole Board Decision, annexed to Breen Aff. as Ex. R, Docket Entry No. 11-7.) In its decision, the Parole Board noted that it considered "the recent information from [the] [Kings County] [District Attorney]'s Office" before denying parole. (*Id.*) On October 7, 2013, the Parole Board again denied Petitioner parole, despite noting "the positive letter submitted from the District Attorney." (Oct. of 2013 Parole Board Decision, annexed to Breen Aff. as Ex. S, Docket Entry No. 11-7.)

### g. Federal habeas petition

On January 2, 2014, Petitioner filed a petition for a writ of habeas petition pursuant to 28 U.S.C. § 2254, arguing that: (1) prosecutors breached his plea agreement by failing to inform the Parole Board of his cooperation with investigators and by failing to support his early release on parole, (Pet. 6); and (2) his counsel provided ineffective assistance during plea negotiations and during his post-plea efforts to cooperate with prosecutors' investigations, (*id.* at 7).

## II. Discussion

### a. Standard of review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal

law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Shoop v. Hill*, 586 U.S. ---, ---, 139 S. Ct. 504, 506 (2019) (per curiam) ("[H]abeas relief may be granted only if the state court's adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of,' Supreme Court precedent that was 'clearly established' at the time of the adjudication." (first quoting *White v. Woodall*, 572 U.S. 415, 419, (2014)); and then citing *Metrish v. Lancaster*, 569 U.S. 351, 357–358 (2013)); *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016) (per curiam); *Hittson v. Chatman*, 576 U.S. 1028, 1028 (2015); *Woods v. Donald*, 575 U.S. 312, 313 (2015) (per curiam); *Johnson v. Williams*, 568 U.S. 289, 292 (2013). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001)); *see also Kernan*, 136 S. Ct. at 1606; *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Under the section 2254(d) standards, a state court's decision must stand as long as "'fairminded jurists could disagree' on the correctness of that decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000); *see also Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) ("As we have repeatedly emphasized, however, circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" (quoting 28 U.S.C. § 2254(d)(1))); *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) ("The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision."). A state

court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 412–13. In order to establish that a state court decision is an unreasonable application of federal law, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citing *Williams*, 529 U.S. at 410, 412). The decision must be "objectively unreasonable." *Id.* (citing *Williams*, 529 U.S. at 409).

A court may also grant habeas relief if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "[S]tate-court factual determinations [are not] unreasonable 'merely because [a federal post-conviction court] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Rather, factual determinations made by the state court are "presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Even if "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to'" overturn a state court's factual determination. *Wood*, 558 U.S. at 301 (alteration in original) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). A court may overturn a state court's factual determination only if the record cannot "plausibly be viewed" as consistent with the state court's fact-finding or if "a reasonable factfinder must

conclude" that the state court's decision was inconsistent with the record evidence. *Rice*, 546 U.S. at 340–41.

### b. Jurisdictional issues: mootness and custody

Before turning to the merits, the Court must determine whether Petitioner's 2015 release from incarceration and 2020 discharge from parole moots the petition or prevents Petitioner from satisfying the statutory "in custody" requirement. Although neither party has addressed any jurisdictional issues, the Court has an independent obligation to assure itself that it possesses subject matter jurisdiction over the case.[8] *See, e.g.*, *Winston v. City of Syracuse*, 887 F.3d 553, 558 n.3 (2d Cir. 2018) ("[E]ven though 'neither party has raised the issue of mootness on appeal,' mootness 'is a jurisdictional question, [and thus] we must "examine the issue *sua sponte* when it emerges from the record."'" (second alteration in original) (quoting *Muhammad v. City of N.Y. Dep't of Corr.*, 126 F.3d 119, 122 (2d Cir. 1997))). Although Petitioner easily satisfies the "in custody" requirement, whether the petition is moot presents a closer call. The Court finds that the case is not moot, but nevertheless dismisses the petition on the merits. However, the Court permits Respondent an opportunity to argue that the petition is moot.

### i. Petitioner satisfies the in custody requirement

Petitioner satisfies the "in custody" requirement because he was incarcerated at the time he filed his petition.

Only "a person in custody pursuant to the judgment of a State court" may successfully petition a federal court to issue a writ of habeas corpus. 28 U.S.C. § 2254(a). District courts lack jurisdiction over habeas petitions filed by petitioners who are not "in custody" as that term

---

[8] The Court notes that at the time the parties filed their briefs, these issues did not exist because Petitioner was incarcerated.

is used in 28 U.S.C. § 2254(a).  *See Nowakowski v. New York*, 835 F.3d 210, 215 n.5 (2d Cir.

2016) ("[T]he requirement of custody is jurisdictional, and thus, [the court has] an obligation to

consider it [*sua sponte*]." (citing *Ogunwomoju v. United States*, 512 F.3d 69, 75 (2d Cir. 2008))).

However, a person need only satisfy this requirement at the time of filing the petition.  *Id.* at 215

("In order for a federal court to have jurisdiction over a habeas petition, the petitioner must be 'in

custody pursuant to the judgment of a State court' at the time the petition is filed." (first quoting

28 U.S.C. § 2254(a); and then citing *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989))).

　　　　Petitioner was incarcerated in early 2014 at the time the Court received his petition.

(Pet. 2.)  He therefore satisfies the "in-custody" requirement of § 2254(a).

### ii.　**The petition is not moot**

　　　　The Court finds that the case is not moot and, as discussed below, decides the merits of

the petition, but allows Respondent an opportunity to demonstrate otherwise.

　　　　Because mootness deprives a federal court of subject matter jurisdiction, the Court must

*sua sponte* determine whether this case is moot.  *See Coll. Standard Mag. v. Student Ass'n of

State Univ. of N.Y. at Albany*, 610 F.3d 33, 35 (2d Cir. 2010) (per curiam) ("The parties' failure

to raise in their briefs the question of whether this appeal is moot . . . does not allow [the court]

to proceed despite the absence of a live case or controversy.  '[The court has] an independent

obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*.'" (first

quoting *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006)); and then citing *Muhammad v. City of

New York Dep't of Corr.*, 126 F.3d 119, 122–23 (2d Cir. 1997))).

　　　　The mootness doctrine prohibits federal courts from issuing judicial decisions in a case

— even if that case once featured a live controversy — if developments after the filing of the

litigation render a federal court unable to grant any effectual relief to the prevailing party.  *See*

*Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("'[I]t is not enough that a dispute was very much alive when suit was filed;' the parties must 'continue to have a "personal stake"' in the ultimate disposition of the lawsuit.'" (alteration in original) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990))). "Once, as here, a petitioner's sentence has expired, 'some concrete and continuing injury other than the now-ended incarceration or parole — some "collateral consequence" of the conviction — must exist if the suit is to be maintained.'" *Nowakowski*, 835 F.3d at 217–18 (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). The Second Circuit has "articulated a burden-shifting framework for determining whether a habeas petition is rendered moot by a petitioner's release from custody." *Dhinsa v. Krueger*, 917 F.3d 70, 77 n.5 (2d Cir. 2019) (citing *Nowakowski*, 835 F.3d at 225). In the first stage, the habeas petitioner "must identify some continuing collateral consequences that may flow from his criminal conviction — including those that . . . are merely hypothetical and speculative. Once a petitioner does so, however, the state bears the burden to prove by sufficient evidence that there is 'no possibility' such consequences will attach to his conviction." *Nowakowski*, 835 F.3d at 225 (footnote omitted) (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968)).

Rather than further delay this case by asking Petitioner to identify potential collateral consequences which could flow from the murder conviction he challenges, the Court will *sua sponte* identify some. For example, if Petitioner were to testify in a civil or criminal action — whether as a party or non-party witness — he would be subject to impeachment on the basis of his criminal conviction. *See* Fed. R. Evid. 609(a). In addition, Petitioner's murder conviction impairs his ability to possess a firearm. *See* 18 U.S.C. 922(g)(1). Although apparently restored in New York, Petitioner may also face barriers to exercising his right to vote if he were to move to a state which bars convicted felons from casting ballots. *See* Nora Demleitner, *Felon*

*Disenfranchisement*, 49 U. Memphis L. Rev. 1275, 1277 & n.4 (2019). The conviction could preclude Petitioner from jury service. *See* 28 U.S.C. § 1865(b)(5). It also likely disqualifies him from military service. *See* 10 U.S.C. § 504(a). Petitioner may find his ability to obtain an occupational license — everything from architect to zookeeper, *see* N.Y. Educ. L. § 7304(7); *id.* § 6711(7) — hampered by the challenged judgment. *See generally* Alec C. Ewald, *Barbers, Caregivers, and the "Disciplinary Subject": Occupational Licensure for People With Criminal Justice Backgrounds*, 46 Fordham Urb. L.J. 719, 724 (2019). Private landlords are likely to take unfavorable views of Petitioner's conviction, impairing his ability to obtain housing. *See* David Thacher, *The Rise of Criminal Background Screening in Rental Housing*, 33 Law & Soc. Inquiry 5, 11–24 (2008). Thus, Petitioner faces a variety of collateral consequences that stem from the conviction now under review,[9] none of which depend on whether he remains incarcerated or subject to parole supervision.

---

[9] The Court recognizes that the murder conviction Petitioner challenges is not his only felony conviction. *See People v. Nieves*, 678 N.Y.S.2d 497 (App. Div. 1998). The prosecutors' 2006 Letter to Parole indicates that "[Petitioner] had previously been convicted of several crimes in the state of New York," and that in 1992, he pled guilty to attempted robbery in the first degree, was sentenced to one and a half to four years in prison, and was on parole when he committed the murder in the underlying case. (*See* 2006 Letter to Parole.) Petitioner would therefore continue to suffer many of the potential collateral consequences from his prior felony convictions even if the Court were to vacate the murder conviction at issue in this case. However, this does not moot Petitioner's case as Petitioner remains eligible for pardons for his other criminal convictions, which, if granted, would potentially leave this conviction as the sole disabling criminal judgment. The possibility likewise exists that Petitioner could possess a meritorious claim to vacate his prior convictions. Moreover, the fact that the chance of a pardon or a successful postconviction challenge remains speculative does not preclude the existence of a live controversy, given the latitude afforded to postconviction petitioners when conducting a mootness analysis. *See, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 8 (1998) ("In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)." (citing *Sibron v. New York*, 392 U.S. 40, 55–56 (1968))).

Having identified several potential collateral consequences possibly attendant to Petitioner's murder conviction, the burden now shifts to the state to demonstrate "that there is 'no possibility' such consequences will attach to his conviction." *Nowakowski*, 835 F.3d at 225 (quoting *Sibron*, 392 U.S. at 57). The Court believes that there is some possibility, however remote, that at least one of these collateral consequences will attach to Petitioner's murder conviction after his release from prison and discharge from parole. Accordingly, the Court makes a preliminary finding that the case is not moot.

However, the Court recognizes that it lacks the benefit of briefing on mootness because both parties filed their primary briefs in 2014, before Petitioner's 2015 release from incarceration and 2020 discharge from parole. If Respondent disagrees with the Court's preliminary conclusion that this case is not moot, the Court will permit (but not require) Respondent to move for reconsideration of the Court's mootness conclusion. If Respondent moves for reconsideration of this issue, the Court will consider the issue *de novo*. Unless and until that occurs, the Court concludes that the case is not moot. The Court therefore proceeds to analyze the substance of the petition.

### c.    Breach of the plea agreement

Petitioner argues that prosecutors breached the plea agreement by promising and then failing to urge the Parole Board to grant Petitioner early release to parole in exchange for his cooperation in an unrelated investigation. (Pet. 6.)

Respondent argues that the claim is time-barred because "defendant was required to file his habeas application within one year from the date on which he was first denied parole, September 30, 2009." (Resp't's Mem. in Resp. to Order to Show Cause ("Resp't's Mem.") 15, Docket Entry No. 11 (citing 28 U.S.C. § 2244(d)(1)(D)).)

The Court finds Petitioner's claim timely but rejects the claim on its merits because prosecutors promised only to inform the Parole Board of Petitioner's cooperation — a promise they belatedly kept.

### i. Statute of limitations

As an initial matter, the Court rejects Respondent's argument that this claim violates the AEDPA statute of limitations. Respondent argues that the statute of limitations for this claim began to run on September 30, 2009, when the Parole Board first denied Petitioner early release to parole. (*Id.*) The Court disagrees, finding that the statute of limitations began to run, at the earliest, on February 29, 2012, and that Petitioner therefore timely filed his petition on January 2, 2014.

A petitioner has one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" (the "Due Diligence Discovery Date") to file a federal habeas claim. 28 U.S.C. § 2244(d)(1)(D). Determining the Due Diligence Discovery Date requires an analysis of a claim's "factual predicate." *Id.* When a petition raises multiple claims, each claim may have a separate factual predicate. As a result, the Due Diligence Discovery Date may vary between claims. Accordingly, courts must analyze each claim separately to determine the relevant date for each claim. *See Rivas v. Fischer*, 687 F.3d 514, 534 (2d Cir. 2012) ("The determination of the date on which the factual predicate for a habeas claim is first discoverable is a 'fact-specific' inquiry which requires a district court to analyze the factual bases of each claim and to determine when the facts underlying the claim were known, or could with due diligence have been discovered." (quoting *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000))).

The Due Diligence Discovery Date incorporates a "due diligence" condition, that is, the Due Diligence Discovery Date is the date on which a prisoner could have discovered the factual predicate of the claim "through the use of due diligence." 28 U.S.C. § 2244(d)(1)(D). Due diligence is "reasonable" diligence, but not "maximum feasible diligence." *Rivas v. Fischer*, 294 F. App'x 677, 679 (2d Cir. 2008) (quoting *Wims*, 225 F.3d at 190–91). However, due diligence still "demand[s] something more than . . . no diligence at all." *Johnson v. United States*, 544 U.S. 295, 309 (2005). At a minimum, diligence requires some level of inquiry into the relevant circumstances. *See Rodney v. Breslin*, No. 07-CV-4519, 2008 WL 2331455, at *3 (E.D.N.Y. June 3, 2008) (finding that "'the date on which the limitations clock began to tick is a fact-specific issue' and consider[ing] the reasonableness of a delay under the petitioner's particular circumstances" (quoting *Wims*, 225 F.3d at 190–91)); *see also Holland v. Florida*, 560 U.S. 631, 653–54 (2010) (reversing and remanding on the grounds that "no lower court has . . . considered in detail the facts of this case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief"). "[T]he burden of demonstrating due diligence rests with petitioner." *Shabazz v. Filion*, 402 F. App'x 629, 630 (2d Cir. 2010) (citing *Johnson*, 544 U.S. at 311).

Petitioner exercised due diligence in attempting to discern whether prosecutors upheld their promise to communicate with the Parole Board about his cooperation with investigators. (*See* Pet'r's Aff. 4.) Petitioner could not have suspected that prosecutors failed to inform the Parole Board of Petitioner's cooperation until he was denied parole. After receiving his notice of denial, Petitioner took action to determine whether prosecutors had upheld their end of the bargain by filing a FOIL request. (*See* FOIL Request.) When the Parole Board denied that request, Petitioner administratively appealed. (*Id.* at 33.) When he lost his appeal, he filed a 440

Motion in the Trial Court.  (*See* 440 Motion.)  Petitioner's 440 Motion prompted prosecutors to admit in a court filing that until the day prior, they had not complied with their obligation under the plea agreement to inform the Parole Board of Petitioner's cooperation efforts.  (2012 Letter to Parole.)  These actions by Petitioner constituted reasonable steps to ascertain the factual predicate underlying his claim for breach of the plea agreement.  After taking these reasonable steps, Petitioner learned of the factual predicate shortly after February 29, 2012, when he received prosecutors' brief in which they admitted that they had not discussed Petitioner's cooperation with the Parole Board until recently.  (*See* Pet'r's Aff. 4.)  Accordingly, the Due Diligence Discovery Date — and, therefore, the date on which the statute of limitations began to run — was, at the earliest, February 29, 2012.

Having determined the Due Diligence Discovery Date, the Court must also determine whether all of the time following February 29, 2012, accrues towards the statute of limitations. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under" AEDPA's statute of limitations.  28 U.S.C. § 2244(d)(2). Respondent concedes — and the Court therefore assumes, without deciding — that no time accumulated towards the statute of limitations between June 30, 2011, and August 22, 2012, or between October 14, 2012, and August 22, 2013, when Petitioner's first and second 440 Motions, respectively, were pending in state courts.  (Resp't's Mem. 16.)  Thus, the only time counting towards Petitioner's one-year deadline accrued between late August of 2012 and mid-October of 2012 (less than two months) and again from late August of 2013 to the filing[10] of the

_____

[10]  The Court received the petition on January 2, 2014.  (Pet. 2.)  The effective filing date may be even earlier, because the "prison mailbox rule" obligates the Court to consider an

19

petition in early 2014 (just over four months). A petitioner may allow up to a year of countable time to pass before filing a federal habeas petition. *See id.* § 2244(d)(1). Because less than a year of countable time accumulated towards the statute of limitations before Petitioner filed his breach-of-plea-agreement claim, the claim is timely.

### ii. Merits of the petition

Although Petitioner's claim is timely, it fails on its merits. First, prosecutors did not breach the plea agreement in the manner Petitioner contends. Second, although prosecutors did commit a breach of the plea agreement in a manner different than Petitioner alleges, prosecutors took subsequent corrective action, and the Trial Court did not unreasonably determine that prosecutors' action sufficed to remedy their breach.

"[A] defendant may not be bound to a plea agreement following a prosecutorial breach of an enforceable provision of such an agreement." *Kernan v. Cuero*, 583 U.S. ---, ---, 138 S. Ct. 4, 8 (2017) (per curiam) (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)). Following a breach of a plea agreement, "the defendant is entitled to seek a remedy, which might in some cases be . . . withdraw[al] [of] his plea. But rescission is not the only possible remedy; [courts may also order] the Government [to] fully comply with the agreement — in effect, specific performance of the contract." *Puckett v. United States*, 556 U.S. 129, 137 (2009) (citing *Santobello*, 404 U.S. at 263). The choice of remedy rests with the discretion of the court. *Cuero*, 583 U.S. at ---, 138 S. Ct. at 8 (quoting *Santobello*, 404 U.S. at 262–63). Prosecutors must in

---

incarcerated litigant's papers to be deemed filed at the moment the prisoner hands the papers to prison officials for mailing. *See, e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 452 n.2 (E.D.N.Y. 2018) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)). To receive the benefit of the prison mailbox rule, a prisoner must comply with certain procedural requirements. *See* Rule 3(d) Gov'g § 2254 in U.S. Dist. Cts. The Court need not determine whether the prison mailbox rule applies because the petition is timely even if Petitioner is not entitled to the rule's protection.

fact have meaningfully breached the plea agreement for this framework to apply. *See Prelaj v. United States*, No. 16-CR-0055, 2020 WL 3884443, at *5 (S.D.N.Y. July 9, 2020) ("[A] *de minimis* breach will preclude either remedy where 'the violation is so minor that it does not cause the defendant to suffer any meaningful detriment.'" (quoting *United States v. Vaval*, 404 F.3d 144, 155 (2d Cir. 2005))). Petitioner contends that prosecutors promised to advocate for his early release to parole after serving his minimum sentence. (Pet. 6.) The Trial Court disagreed when denying Petitioner's first 440 Motion, (*see* Trial Court's First Postconviction Order 3), and the record supports the Trial Court's finding, (*see* Plea Hr'g Tr. 2:13–23). At Petitioner's plea hearing, Petitioner's attorney explained that prosecutors would "acknowledge [Petitioner's] cooperation" before the Parole Board. (*Id.*) He did not say that prosecutors would endorse Petitioner's early release to parole. (*Id.*) Prosecutors verbally agreed that the statement of Petitioner's trial counsel accurately reflected the substance of the plea agreement. (*Id.*) When entering his guilty plea, the Trial Court asked whether "anyone made any other promises to you in connection with the sentence," to which Petitioner responded, "No." (*Id.* 2:24–3:2.) In the face of this record, the Court cannot find that the Trial Court unreasonably determined the facts by finding that prosecutors never promised to advocate for Petitioner's early release to parole. Prosecutors cannot have breached a promise they never made.

Prosecutors did breach Petitioner's plea agreement by initially failing in 2006 to inform the Parole Board of Petitioner's cooperation with investigators, (*see* 2006 Letter to Parole; Trial Court's First Postconviction Order 2–3), but subsequently corrected their failure in the 2012 Letter to Parole, (2012 Letter to Parole). The Trial Court held that this correction sufficiently remedied prosecutors' breach of the plea agreement. (Trial Court's First Postconviction Order 2–3.) Although Petitioner asked the Trial Court to void the plea agreement entirely, the Trial

Court held that rescission of the entire plea agreement was not warranted when a lesser remedy — enforcement of prosecutors' promise to tell the Parole Board about Petitioner's cooperation — was available. (*Id.* at 3.) Because the governing legal framework allows state courts discretion to remedy prosecutorial breaches of plea agreements as the state courts deem fit, this Court cannot conclude that the Trial Court's decision unreasonably applied clearly established Supreme Court precedent. *See Deboue v. Girdich*, No. 04-CV-119, 2005 WL 1377949, at *3 (E.D.N.Y. June 9, 2005) ("When a prosecutor breaches a plea agreement, the defendant is entitled to either specific performance of the plea agreement or to the opportunity to withdraw his plea of guilty, at the discretion of the court." (citing *Santobello*, 404 U.S. at 263)).

In sum, the Trial Court did not unreasonably determine the facts by finding that prosecutors never promised to advocate for Petitioner's early release to parole upon becoming eligible. Likewise, the Trial Court did not unreasonably apply clearly established Supreme Court precedent by finding that prosecutors' belated compliance with Petitioner's plea agreement was sufficient to remedy their initial violation of that agreement. Accordingly, this claim does not entitle Petitioner to federal habeas relief.

### d. Ineffective assistance of counsel

Petitioner argues that his trial counsel provided ineffective assistance: (1) during various stages of the plea negotiation process, and (2) by failing to accompany Petitioner while Petitioner spoke with investigators as part of his cooperation efforts. (Pet. 8.) For the reasons explained below, the Court finds that this claim is procedurally defaulted.

"[A] federal court may not review federal claims that were procedurally defaulted in state court — that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. ---, ---, 137 S. Ct. 2058, 2064 (2017). "But, for this

procedural default rule to apply, the state court must have 'clearly and expressly state[d] that its judgment rest[ed] on a state procedural bar.'" *Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018) (alterations in original) (citing *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 118 (2d Cir. 2015)). "'To qualify as an "adequate" procedural ground,' capable of barring federal habeas review, 'a state rule must be "firmly established and regularly followed."'" *Johnson v. Lee*, 578 U.S. ---, ---, 136 S. Ct. 1802, 1803 (2016) (per curiam) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)). The Second Circuit has held that New York Criminal Procedure Law § 440.10(3)(c) — which allows a state court to deny a claim in a post-conviction motion if the movant could have, but failed to, raise the same claim in an earlier Article 440 motion — "constitutes an adequate state procedural bar to federal habeas review." *Murden v. Artuz*, 497 F.3d 178, 192 (2d Cir. 2007); *see also Gousse v. Superintendent, Wende Corr. Facility*, No. 19-CV-1607, 2020 WL 4369643, at *15 (E.D.N.Y. July 29, 2020) (rejecting a claim as procedurally defaulted where the state court denied the claim on account of section 440.10(3)(c)).

The Court may not review Petitioner's claim for ineffective assistance of counsel because he procedurally defaulted this claim in state court. When adjudicating this same claim in Petitioner's second 440 Motion, the Trial Court explicitly relied on section 440.10(3)(c) to deny Petitioner's claim, finding that he "had access to the same facts and information when he filed his previous motion" as he did when filing the second 440 Motion, rendering the "new claims procedurally barred from [the] [c]ourt's review." (Trial Court Second Postconviction Order 3.) The Trial Court's clear and express reliance on this independent and adequate state procedural rule to deny Petitioner's claim for ineffective assistance of counsel precludes federal habeas review of that claim. Accordingly, the Court rejects this claim.

### e.  Certificate of appealability

Having denied the petition for a writ of habeas corpus, the Court denies a certificate of appealability for all of Petitioner's claims.[11]  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a) Gov'g § 2254 Cases in U.S. Dist. Cts.  A court must issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means that a habeas petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  "This threshold question should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'"  *Buck v. Davis*, 580 U.S. ---, ---, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).  "Obtaining a certificate of appealability 'does not require a showing that the appeal will succeed,' and "[courts] should not decline the application . . . merely because [they] believe[] the applicant will not demonstrate an entitlement to relief."  *Welch v. United States*, 578 U.S. ---, ---, 136 S. Ct. 1257, 1263–64 (2016) (quoting *Miller-El*, 537 U.S. at 337).  In fact, a certificate of appealability may issue even if "every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that petitioner will not prevail."  *Miller-El*, 537 U.S. at 327.

---

[11]  Respondent does not require a certificate of appealability to appeal this Court's jurisdictional determinations.  *See Lurie v. Wittner*, 228 F.3d 113, 121 (2d Cir. 2000).

The Court denies a certificate of appealability as to Petitioner's claim for breach of the plea agreement because no reasonable jurist could find that prosecutors in fact agreed to advocate for Petitioner's early release to parole following his cooperation in an unrelated investigation. The record from the plea hearing contains no mention of such a commitment — only a commitment to make the Parole Board aware of Petitioner's cooperation. (*See* Plea Hr'g Tr. 2:12–23.) The record also reveals that when the Trial Court asked Petitioner if there were any other promises made to Petitioner to induce his guilty plea — which presumably would include an outside-the-record promise by prosecutors to endorse Petitioner's early release to parole — Petitioner said, "No." (*Id.* 7:15–17.) Based on this record, no reasonable jurist could find that the Trial Court unreasonably determined the facts by holding that prosecutors never made such a promise. A certificate of appealability is therefore inappropriate.

Nor could any reasonable jurist find that the Trial Court unreasonably applied clearly established Supreme Court precedent by holding that the 2012 Letter to Parole alerting the Parole Board to Petitioner's cooperation sufficed to remedy their prior failure to inform the Parole Board earlier, as prosecutors promised during Petitioner's plea hearing. As discussed above, the legal framework governing breach-of-plea-agreement claims gives discretion to state courts to determine the appropriate remedy. No reasonable jurist could debate whether the Trial Court so unreasonably exercised its discretion that all fair-minded jurists would disagree with the Trial Court's decision. Accordingly, this claim does not warrant a certificate of appealability.

Finally, the Court declines to issue a certificate of appealability with regard to Petitioner's claim for ineffective assistance of counsel because the Trial Court explicitly relied on a state procedural rule to deny Petitioner's claim. (*See* Trial Court Second Postconviction Order 3.) The Second Circuit has confirmed that this exact provision suffices to bar federal habeas review

of a claim. *See Murden*, 497 F.3d at 192 (finding that "subsection (3)(c) of C.P.L. § 440.10 constitutes an adequate state procedural bar to federal habeas review"). Therefore, no reasonable jurist could debate this Court's routine application of the doctrine of procedural default. Accordingly, Petitioner is not entitled to a certificate of appealability on this claim.

### III. Conclusion

For the reasons explained above, the Court finds that it possesses subject matter jurisdiction over this petition and declines to grant habeas corpus relief as to any of Petitioner's claims. The Court denies a certificate of appealability for all claims. Respondent may, but is not required to, move for reconsideration concerning this Court's conclusion regarding mootness within thirty days of this Memorandum and Order.

Dated: June 7, 2021
      Brooklyn, New York

SO ORDERED:

  s/ MKB         
MARGO K. BRODIE
United States District Judge